Albion D. T. Libby and Carolyn W. Libby v. Commissioner.
Libby v. Commissioner
Docket No. 17340.
United States Tax Court
1949 Tax Ct. Memo LEXIS 217; 8 T.C.M. (CCH) 356; T.C.M. (RIA) 49488; April 19, 1949
*217 Albion D. T. Libby, pro se. John E. Mahoney, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The respondent determined a deficiency in the income tax of petitioners in the amount of $392.68 for the calendar year 1944. The sole question is whether or not the petitioners are entitled to a bad debt deduction of $450. Findings of Fact The petitioners, husband and wife, reside at East Orange, N.J. They filed a joint return for the taxable year 1944 with the collector of internal revenue for the fifth district of New Jersey. Albion D. T. Libby, hereinafter referred to as the petitioner, advanced to his half-brother, Harmon Libby, $150 in 1922, $200 in 1931, and $100 in 1932, making a total of $450. One of these advancements was evidenced by a note for $100 dated May 28, 1932. The petitioners, in their income tax return for the year 1944, took as a deduction for a bad debt, the sum of $450. This deduction was disallowed by the respondent. At the time that the advancements of funds were made by petitioner to his half-brother, the petitioner did not know the latter's financial condition, other than that it was poor. The petitioner *218 never made any inquiry into the financial condition of his half-brother, either upon the advancement of any funds or through the years that followed, including the taxable year in controversy. Prior to 1944 the petitioner never asked his half-brother whether he would repay the loans. Petitioner knew he had a large family, that he had a lot of sickness, and was in "tough" circumstances. In 1944, petitioner thought that his half-brother's financial condition had improved somewhat because his family had "become grown up" and it seemed to him that at that time his half-brother did not have so much expense. The only effort the petitioner made during 1944 to collect any of the advancements made to his half-brother was to ask the latter "when he was going to pay." The half-brother replied, "I don't know." The indebtedness owed by the half-brother to the petitioner did not become worthless in the taxable year 1944. Opinion Section 23(k) of the Internal Revenue Code, as amended by section 124(d) of the Revenue Act of 1942, provides that there shall be allowed as deductions debts which become worthless within the taxable year. In order to be entitled to the deduction *219 claimed in this proceeding, the burden was on the petitioner to prove that the debt owed him by his half-brother had value at the beginning of the taxable year, and that an identifiable event occurred during that year which destroyed any chance of recovery of the amount loaned. The evidence is far from complete as to the financial condition of the debtor, both at the time of the creation of the debt and during the taxable year 1944. Petitioner's Exhibit 1, which is a letter from the debtor to the petitioner dated September 24, 1931, states that the debtor was working two and one-half days a week, and indicates that his financial condition was very bad. It may well be that during the depression years, when two of the debts were created, the debtor was insolvent. If so, it is quite possible that the debts were worthless at that time and since petitioner testified that the debtor's financial condition remained the same from 1932 through 1944, the debts remained worthless and had no value at the beginning of 1944. Even if it be assumed that they had some value on January 1, 1944, petitioner has not shown that an identifiable event occurred during the year which clearly indicated that *220 all chance of recovery was extinguished. Certainly a statement by the debtor that he did not know when he would be able to pay the debts is not such an indication. It is quite evident from his testimony that the petitioner was reluctant to proceed against his half-brother for the enforcement of payment, and that he did not exhaust all possible means of obtaining reimbursement in 1944. At the hearing the petitioner testified that in 1948, under a settlement agreement between him and the debtor, the latter paid off two of the notes in the amount of $350, and it was agreed that the remaining $100 note was not to be collected. There is some confusion in the record as to whether the petitioner now claims that $350 of the debt became worthless in 1944. He apparently still claims that he is entitled to the deduction for the $100 note. From all the evidence, however, we are not convinced that any part of the indebtedness of $450 became worthless in 1944, and the respondent's disallowance of the bad debt deduction taken by petitioners in their return for that year is approved. Decision will be entered for the respondent.